UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| RACHELLE HARRIS, individually and on behalf of all others similarly situated, <br>             Plaintiff, <br><br> v. <br><br> ROEHL TRANSPORT, INC., <br><br>             Defendant. | Civil Action No. <br><br> **JURY DEMANDED** |

## CLASS ACTION COMPLAINT

**I.     INTRODUCTION**

1.     This is a class action brought by Plaintiff on behalf of individuals who allegedly owe Defendant Roehl Transport, Inc. ("Roehl") the amount of $7,000 (or some lesser amount due to payments made by individuals toward this alleged debt), after being denied the opportunity to complete their training and mileage obligation under a training repayment agreement.

2.     Plaintiff alleges that Roehl recruited her and other drivers for work as over-the-road drivers ("OTR drivers") using unfair trade practices in violation of Wisconsin's Deceptive Trade Practices Act ("DTPA"), Wis. Stat. § 100.20.

3.     Specifically, Roehl failed to comply with an order issued by the Wisconsin Department of Agriculture, Trade and Consumer Protection regulating "Work Recruitment Schemes." Wis. Admin. Code ATCP § 116.01, et seq.

1

4. First, Roehl failed to include in its advertisements the nature and amount of the financial obligation that a recruit must incur in order to become employed by Roehl, in violation of Wis. Admin. Code ATCP § 116.02.

5. Second, Roehl requires recruits to incur this financial obligation as part of the first step in the job application process, before they are even interviewed by a recruiter. And yet, the written document signed by recruits, purporting to indicate their agreement with the financial obligation, does not include information required by Wis. Admin. Code ATCP § 116.03 about the terms and conditions of the work that recruits will be obligated to perform under the agreement, such as the rate of pay, fringe benefits, or work hours. Moreover, the written document's description of the nature and terms of the financial obligation, and the consideration given by Roehl in return, is highly misleading.

6. Third, in Roehl's subsequent communications with recruits, including the "Conditional Employment Offer," Roehl makes statements of potential earnings, without including the disclosures required by Wis. Admin. Code ATCP § 116.04.

7. Fourth, Roehl makes false, deceptive, and misleading representations to recruits about the nature of their obligations under the training repayment agreement, and the conditions under which they will become obligated to repay Roehl the amount of $7,000, in violation of Wis. Admin. Code ATCP § 116.05.

8. Specifically, Roehl recruited Plaintiff and other OTR drivers with the promise of training and a job, without disclosing that Roehl reserved the right to unilaterally kick them out of the program and still demand repayment of the full amount of $7,000. Roehl also made misleading statements suggesting otherwise.

2

9.     Plaintiff and all members of the putative class suffered pecuniary losses because of Roehl's violations of Wis. Stat. § 100.20 and Wis. Admin. Code ATCP § 116.

10.    Specifically, Roehl alleged in the training repayment agreement that the value of the training was $7,000, and that this was the consideration provided by Roehl in exchange for Plaintiff's obligation under the agreement to drive 120,000 miles for Roehl (or pay Roehl the amount of $7,000 if they failed to do so). Plaintiff, who was terminated from the training program by Roehl, was deprived of the value of that training, and yet has been put in collections by Roehl for the full amount of $7,000. Plaintiff did not consent to this arrangement, nor could she have consented, based on the information provided to her by Roehl.

11.    Plaintiff has suffered pecuniary loss because of Roehl's unfair trade practices, in the amount of no less than $7,000, and is entitled to twice this amount pursuant to Wis. Stat. § 100.20(5).

12.    Plaintiff further alleges that Roehl has violated the Wisconsin Antitrust Law, Wis. Stat. § 133.03(1), by requiring drivers to enter into unlawful contracts that place an unreasonable restraint on trade in the labor market.

13.    Roehl's training repayment agreement is not a reasonable restraint on trade, because it is not narrowly tailored to protect Roehl's actual investment in training new drivers.

14.    The lack of reasonableness is best demonstrated by the fact that Roehl demands repayment of $7,000, regardless of whether drivers have completed only one week of training, or have already driven 100,000 miles and are only 20,000 miles from completing their obligation under the training repayment agreement.

15. The lack of reasonableness is further demonstrated by the fact that Roehl demands payment of $7,000 regardless of whether the driver resigns from the training program or Roehl kicks the driver out of the training program.

16. Plaintiff has been injured both directly and indirectly as a result of Roehl's unlawful contracts and seeks treble damages for the damages she has sustained, pursuant to Wis. Stat. § 133.18.

17. Plaintiff alleges, in the alternative, that the amount of $7,000 is an unlawful and unenforceable penalty under Wisconsin common law, contrary to its characterization in the training repayment agreements as the value of the training that, in Roehl's words, "is in effect a loan to you."

**II.   PARTIES**

18. Plaintiff Rachelle Harris is an adult resident of Turnbull County in the state of Indiana. She was recruited by Roehl to attend Roehl's Safety and Job Skills Training Program-Get Your CDL ("GYCDL Training Program") in January 2024, and she attended the program from approximately February to May 2024.

19. For the DTPA claims, Plaintiff brings this action on behalf of a class defined as follows: all individuals who have been recruited to attend Roehl's GYCDL Training Program and were terminated by Roehl from the program within the past three years.

20. For the Wisconsin Antitrust and unlawful penalty claim, Plaintiff brings this action on behalf of a class defined as follows: all individuals who have been terminated by Roehl from the GYCDL Training Program within the past six years.

21. Defendant Roehl Transport, Inc. is a Wisconsin corporation that recruits drivers for work opportunities through its GYCDL Training Program. Roehl has a principal office in Marshfield, Wisconsin (Wood County) and has offices in Neenah, Wisconsin.

### III.  JURISDICTION AND VENUE

22. This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1332(d)(1) because this is a class action and the amount in controversy exceeds the sum or value of $5 million.

23. The named Plaintiff resides in a state different from Defendant.

24. This Court has personal jurisdiction over Defendant pursuant to Rule 4(k)(1)(a) of the Federal Rules of Civil Procedure because Defendant is at home in Wisconsin and is subject to the jurisdiction of a court of general jurisdiction in the State of Wisconsin.

25. Venue is proper in the Western District of Wisconsin pursuant to 28 U.S.C. § 1391(b) because Defendant resides in Wood County.

### IV.  FACTS

26. Roehl is a motor carrier based in Wisconsin that offers a variety of transportation services nationwide.

27. Based on information submitted to and published by the Federal Motor Carrier Safety Administration ("FMCSA") Safety Measurement System, Roehl employs more than 2,000 drivers at a given time.

28. In order to employ that number of drivers, Roehl recruits individuals with little or no experience in the trucking industry and requires them to go through a "Safety and Job Skills Training Program."

29. The duration and content of the training program depends on whether individuals already have a commercial driver's license ("CDL") or need to obtain one.

30. The program for individuals who do not already have a CDL is called "Safety and Job Skills Training Program-Get Your CDL" or "SJSTP-GYCDL" (hereinafter, "GYCDL Training Program").

31. Plaintiff already possessed a Class B CDL when she applied online for a job at Roehl.

32. Among the many disclosures she was required to sign as part of this first, initial portion of the application process, Plaintiff was required to sign an "Agreement for the Value of the Safety and Job Skills Training Program – Get Your CDL" ("Agreement").

33. Plaintiff signed the Agreement during the morning of February 8, 2024.

34. The Agreement opens with the statement, "Congratulations on your acceptance into the Roehl Transport Safety and Job Skills Training Program ('SJSTP')!"

35. At the time she signed the Agreement, Plaintiff had not yet been interviewed by a recruiter and had not yet been "accepted" into the GYCDL Training Program, a fact which is acknowledged by a standardized email Plaintiff received from a Roehl recruiter later that same day with the subject line "We're Ready to Move Forward," and further stating, "I've reviewed your online application for the Get Your CDL employment opportunity, and I'm ready to get you into your new truck driving job!"

36. The Agreement also states, "This Agreement has a stated term, <u>which begins on the date you sign it</u> and is ongoing until you have satisfied all of the terms of this Agreement." (emphasis added).

37. The Agreement states that this document "explains our financial commitments to one another."

38. In a section titled "Credit Line," the Agreement states that, "In return for your admission to Roehl's SJSTP, Roehl will expend on your behalf the value of the SJSTP, which is equal to $7,000.00."

39. In a section titled "Promise to Pay," the Agreement states that, "By signing this Agreement, you promise to repay to Roehl the value of the SJSTP if you do not complete 120,000 paid solo miles. You are responsible for repayment of these amounts if your employment terminates prior to you completing 120,000 paid solo miles. This debt goes away when you have completed 120,000 paid solo miles. Otherwise, this debt is all due and payable upon termination of your employment. You begin earning paid solo miles when you receive your first load assignment on your First Paid Solo Mile Date."

40. In a section titled "Default," the Agreement states that, "If you fail to repay the entire balance owing to Roehl under this Agreement within thirty (30) days following your separation date, you understand and agree that Roehl may go to court to recover the entire unpaid balance and accrued interest. If this Agreement is placed in the hands of an attorney for collection, or if any amounts payable under this Agreement are collected by lawsuit or through other proceedings, you agree to pay all costs and expenses incurred in connection with such collection efforts, including but not limited to Roehl's reasonable attorney's fee and court costs, together with interest on such amounts at the maximum rate allowed by law."

41. The Agreement does not contain information about the terms and conditions of the work that Plaintiff became obligated to perform as of the date she signed the Agreement, such as the rate of pay, fringe benefits, or work hours.

42. Plaintiff did not notice anything about a $7,000 repayment obligation in this initial paperwork she signed, which otherwise consisted of a set of consumer disclosures authorizing Roehl to conduct background checks.

43. One week later, on February 16, 2024, Plaintiff received a "Conditional Offer Letter" from a different Roehl recruiter, which was attached to an email containing information about the orientation that Plaintiff was scheduled to attend in Gary, Indiana, starting February 19, 2024.

44. The letter states that the first day of orientation is "Qualification Day," and that "This is an extension of the applicant consideration process and Roehl Transport does not derive any immediate benefit from the qualification process events. Successful completion of this pre-employment process is necessary to beginning employment at Roehl."

45. The letter describes the phases of the training as follows:

   a. Phase 1 is preparation to obtain a CDL, during which time drivers are paid a weekly rate;

   b. Phase 2 is on-the-job training with a lead driver, during which time drivers are paid a day rate; and

   c. Phase 3 is solo driving "under the guidance of a Fleet Training Manager," at which point drivers are paid a mileage rate, based on their division and fleet.

46. The letter contains no mention of a financial obligation to Roehl, or the requirement that the driver complete 120,000 paid solo miles.

47. Plaintiff signed the Conditional Offer Letter on February 16, 2024.

48. Plaintiff started Phase 1 of Roehl's training program in Gary, Indiana, on February 19, 2024.

8

49. To the best of her memory, Plaintiff first became aware of the $7,000 repayment obligation while she was in Gary, Indiana for Phase 1 training.

50. Plaintiff was told by multiple Roehl trainers during Phase 1 that she would not have to pay the $7,000 if she could not make it through Phases 1 and 2, which is consistent with a reasonable reading of the Agreement.

51. On or around March 15, 2024, Plaintiff proceeded to Phase 2 of the training.

52. On information and belief, Plaintiff did not advance to Phase 3 of the training.

53. After being terminated from the training program, Plaintiff was contacted by a third-party debt collector seeking to collect on Plaintiff's alleged $7,000 financial obligation to Roehl.

54. As of March 7, 2025, Plaintiff's credit report listed an $8,300 open balance owed to the third-party debt collector.

55. It is the practice of Roehl to turn over unpaid accounts to third party debt collectors for all drivers who are terminated from the program early.

56. On information and belief, Roehl interprets its own Agreement to mean that it may choose to terminate drivers from the program, at any point during Phase 1, 2 or 3, or before drivers have completed the 120,000 miles, with or without cause, at which point drivers immediately owe Roehl $7,000.

57. On information and belief, Roehl has deliberately made its Agreement vague and ambiguous, and obfuscates its collections practices during the recruitment process, because it would hinder its ability to recruit new drivers.

58. No reasonable person would agree to such terms, except out of desperation.

59. On its website advertising the GYCDL Training Program, Roehl fails to mention anything about a repayment obligation, let alone a $7,000 repayment obligation; not even on a page dedicated to Frequently Asked Questions. *See, e.g.*, Exhibits A and B.

60. On information and belief, the information available on Roehl's recruiting website mirrors the scripts used by recruiters.

61. Plaintiff did not receive training from Roehl that could be valued at $7,000.

62. On information and belief, no driver receives training from Roehl that could be valued at $7,000.

63. Because Plaintiff did not advance to Phase 3, she did not gain the promised experience of driving solo.

64. On information and belief, the alleged value of the $7,000 training includes Roehl's per capita costs associated with the supervision of drivers during Phase 3, the "value" of which Plaintiff did not receive.

65. Plaintiff and members of the class have suffered pecuniary losses in the amount of no less than $7,000, which is the minimum amount to make her whole given her purported financial obligation to Roehl.

66. Plaintiff and members of the class have also experienced pecuniary losses in the form of lost wages and other opportunity costs, including foregone employment opportunities with better wages, as a result of Roehls' deceptive practices.

67. The $7,000 repayment obligation is intended by Roehl to function as a penalty, the intent of which is to dissuade drivers from leaving Roehl for its competitors before completing a full 120,000 miles of driving for Roehl.

68. The repayment obligation is an unreasonable restraint on trade in the labor market, which provides Roehl with an unfair advantage over its competitors.

69. The repayment obligation is unreasonable because it is not narrowly tailored to protect Roehl's actual investment in training new drivers and instead operates as an unlawful penalty.

70. First, Roehl seeks to collect $7,000 from drivers who do not complete 120,000 miles of driving for Roehl even when Roehl has not provided the driver with the training in Phase 1, Phase 2, or Phase 3.

71. Second, Roehl seeks to collect $7,000 from drivers whom it unilaterally chooses to terminate from the program, which necessarily means that Roehl has decided that the costs of continuing to train and/or employ that driver exceed the benefits to Roehl.

72. Third, on information and belief, the $7,000 figure does not take into account the revenue generated by drivers during Phase 3 of their training, or after, and therefore does not represent a reasonable estimate of Roehl's losses associated with a driver's early termination.

73. Fourth, by requiring drivers to complete 120,000 miles of driving for Roehl, under threat of a $7,000 debt, Roehl insulates itself from competition for these drivers' services, which means that it can pay them less than they would otherwise earn. This allows Roehl to undercut its competitors and is an unreasonable restraint on trade.

74. Plaintiff and members of the class have been injured both directly and indirectly as a result of Roehl's unlawful contracts, and their damages include but are not limited to the amount that would allow them to pay off their debt.

## V. Wisconsin State Law Rule 23 Class Action Allegations

### A. DTPA claims.

75. Plaintiff asserts the DTPA claims on behalf of a class pursuant to Fed. R. Civ. P. 23.

76. Pending any modifications necessitated by discovery, Plaintiff preliminarily defines the class as follows:

> All individuals who have been recruited to attend Roehl's GYCDL Training Program and were terminated by Roehl before completing the program within the past three years.

77. The members of the class are so numerous that joinder of all of them is impracticable. On information and belief, the number of class members exceeds 100.

78. There are issues of law and fact common to all class members because Defendant's recruiting, hiring, and training practices are uniform and applicable to all class members. The common questions of law and fact include but are not limited to: whether Defendant discloses the $7,000 financial obligation to drivers in its advertisements; whether the GYCDL Training Program Agreement contains the disclosures required by regulation; the actual value of training provided to drivers, and whether Defendant is entitled to any offset of damages for training actually provided.

79. Plaintiff's claims are typical of the claims of all members of the class because all members of the class were subject to the same unlawful practices and suffered the same harms.

80. Plaintiff and her counsel will fairly and adequately represent the interests of the class.

81. The claims asserted on behalf of the class predominate over any question of law or fact affecting only individual members of the class. The predominant questions of law or fact

are clear, precise, well-defined, and applicable to Plaintiff as well as every absent member of the proposed class.

82. A class action is superior in this case for several reasons including, but not limited to the following: the case challenges Defendant's uniform recruiting practices and/or representations concerning employment; many employees may be reluctant to bring claims individually for fear of retaliation; some class members may not have the motivation or resources to bring their claims individually; and it would be an inefficient use of scarce judicial resources to require each employee affected by the practices challenged herein to bring his or her own individual claim.

**B.      Wisconsin Antitrust and Common Law Claims.**

83. Plaintiff asserts the Wisconsin Antitrust and common law unlawful penalty claims on behalf of a class pursuant to Fed. R. Civ. P. 23.

84. Pending any modifications necessitated by discovery, Plaintiff preliminarily defines the class as follows:

> All individuals who signed GYCDL Training Program Agreements and were terminated by Roehl before completing the program within the past six years.

85. The members of the class are so numerous that joinder of all of them is impracticable. On information and belief, the number of class members exceeds 200.

86. There are issues of law and fact common to all class members because Defendant's contracts are uniform and applicable to all class members. The common questions of law and fact include, but are not limited to: whether the GYCDL Training Program Agreement is a restraint on trade in the labor market; whether or not the GYCDL Training Program Agreement's provisions are reasonable to protect Roehl's investment in training drivers; whether Roehl intends the $7,000 repayment obligation to dissuade drivers from leaving

Roehl before completing 120,000 miles of driving; and the actual cost to Roehl of the training program, taking into account the revenue it generates for Roehl (*inter alia*).

87. Plaintiff's claims are typical of the claims of all members of the class because all members of the class were subject to the same unlawful practices and suffered the same harms.

88. Plaintiff and her counsel will fairly and adequately represent the interests of the class.

89. The claims asserted on behalf of the class predominate over any question of law or fact affecting only individual members of the class. The predominant questions of law or fact are clear, precise, well-defined, and applicable to Plaintiff as well as every absent member of the proposed class.

90. A class action is superior in this case for several reasons including, but not limited to the following: the case challenges Defendant's uniform recruiting practices and/or representations concerning employment; many employees may be reluctant to bring claims individually for fear of retaliation; some class members may not have the motivation or resources to bring their claims individually; and it would be an inefficient use of scarce judicial resources to require each employee affected by the practices challenged herein to bring his or her own individual claim.

## COUNT I
## WIS. STAT. § 100.20
## (DTPA Claim)

Roehl's unfair trade practices and lack of compliance with Wis. Admin. Code ATCP § 116.01, et seq. violates Wis. Stat. § 100.20(5). This claim is brought on behalf of the named Plaintiff and all other similarly situated individuals pursuant to Fed. R. Civ. P. 23.

14

## COUNT II
## WIS. STAT. § 133.50
## (Antitrust Claim)

Roehl's use of unlawful contracts that impose an unreasonable restraint on trade violates Wis. Stat. § 133.03(1). This claim is brought on behalf of the named Plaintiff and all other similarly situated individuals pursuant to Fed. R. Civ. P. 23.

## COUNT III
## COMMON LAW
## (Unlawful Penalty Claim)

The $7,000 repayment obligation constitutes an unlawful penalty under Wisconsin common law. This claim is brought on behalf of the named Plaintiff and all other similarly situated individuals pursuant to Fed. R. Civ. P. 23.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury for all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully request that this Court enter the following relief:

a.  Certification of the Wisconsin state law claims as class claims under Fed. R. Civ. P. 23;

b.  An award of all double damages that Plaintiff and similarly situated individuals are owed as a result of Defendant's violations of the Wisconsin Deceptive Trade Practices Act;

c.  An award of all treble damages that Plaintiff and similarly situated individuals are owed as a result of Defendant's violations of the Wisconsin Antitrust Law;

d.  A declaration that the $7,000 repayment amount constitutes an unlawful penalty;

e.  An award of attorneys' fees and costs;

f.      Pre- and post-judgment interest; and

g.      Any other relief to which the named Plaintiff and similarly situated employees may be entitled.

Respectfully submitted,

RACHELLE HARRIS,
individually and on behalf of
all others similarly situated,

By their attorneys,

*/s/ Rachel Smit*
Hillary Schwab, WIWD # N/A
Rachel Smit, WIWD # N/A
Brook S. Lane, WIWD *admission pending*
Attorneys for Plaintiff
FAIR WORK, P.C.
192 South Street, Suite 450
Boston, MA 02111
Telephone: (617) 607-3260
Email: hillary@fairworklaw.com
rachel@fairworklaw.com
brook@fairworklaw.com

Dated: March 26, 2025